IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

| | |
|---|---|
| Angie L. Stowe, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:09-cv-34 |
| ) | |
| Michael J. Astrue, Social Security ) | |
| Administration Commissioner, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Angie L. Stowe (hereinafter "Stowe," "plaintiff," or "claimant"), initiated this action under 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-433, and denying her application for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383c.  (Tr. 9-32).  Both parties have moved for summary judgment (Doc. #11, Doc. #15), or in the alternative, plaintiff has moved to remand for additional administrative proceedings.  (Doc. #14).

**Summary of Recommendation**

Substantial evidence on the record as a whole supports the Administrative Law Judge's determination that Stowe is not disabled.  The ALJ's findings that plaintiff's sleep disorder is not severe, plaintiff did not meet the listing for affective disorders or anxiety-related disorders, and the plaintiff's treating physician's opinion is not entitled to significant weight are supported by

substantial evidence on the record as a whole including the new evidence submitted to the Appeals Council. Accordingly, it is **RECOMMENDED** that the Commissioner's decision be **AFFIRMED**.

## Background

Stowe protectively filed her applications for disability insurance benefits and supplemental security income on February 15, 2006 under Title II of the Social Security Act, 42 U.S.C. §§ 401-433, and under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383c. She alleged a disability onset date of January 1, 1983. (Tr. 125). At the hearing before the Administrative Law Judge ("ALJ"), the alleged onset date was amended to January 31, 2006, the date Stowe last performed substantial gainful activity. (Tr. 42-43). Stowe's applications were denied initially and on reconsideration. She requested a hearing, which was held on February 29, 2008. Stowe appeared with her attorney and testified at the hearing. Vocational Expert Frank Samlaska also testified. The Administrative Law Judge ("ALJ") issued his decision on May 28, 2008, finding plaintiff was not disabled. (Tr. 9-32). Stowe requested review of the ALJ's decision and submitted supplemental evidence to the Appeals Council, consisting of additional medical records and a psychological evaluation by Dr. Robert Gulkin. (Tr. 901-30). The Appeals Council considered the additional evidence, finding it did not provide a basis for changing the ALJ's decision. (Tr. 2-4). The Appeals Council denied Stowe's request for review, making the decision of the ALJ the Commissioner's final decision.

Stowe was 36 years old at the time of the hearing. (Tr. 36). She completed high school and obtained an associate degree in music. (Tr. 40-41). She has worked as a cashier, hostess, disc jockey, laundry folder, general laborer, secretary, fast food restaurant supervisor, waitress,

and bartender. (Tr. 159). Stowe alleges she is disabled due to fibromyalgia, back pain, mental impairments, fatigue, headaches and a sleep disorder. (Tr. 48).

## Legal Standard

Upon review of the pleadings and transcript of the record, the court can affirm, modify, or reverse the decision of the Commissioner, with or without remanding the cause for a rehearing. 42 U.S.C. § 405(g). To affirm the Commissioner's decision, the court must find substantial evidence appearing in the record as a whole supports the decision. See id.; Cruse v. Bowen, 867 F.2d 1183, 1184 (8th Cir. 1989). "This standard requires a more searching review than the substantial evidence standard, and [the court will] take into account record evidence that fairly detracts from the ALJ's decision." Tilley v. Astru, 580 F.3d 675, 679 (8th Cir. 2009) (citing Minor v. Astrue, 574 F.3d 625, 627 (8th Cir. 2009)). The court must "take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contradictory." Minor, 574 F.3d at 627 (citing Wilson v. Sullivan, 886 F.2d 172, 175 (8th Cir. 1989)) (quoting Jackson v. Bowen, 873 F.2d 1111, 1113 (8th Cir. 1998)). See also, Burress v. Apfel, 141 F.3d 875, 878 (8th Cir. 1998) ("As this court has repeatedly stated, the 'substantial evidence in the record as a whole' standard is not synonymous with the less rigorous 'substantial evidence' standard."); Gavin v. Heckler, 811 F.2d 1195, 1199 (8th Cir. 1987) ("It is not sufficient for the district court to simply say there exists substantial evidence supporting the [Commissioner] and therefore the [Commissioner] must be sustained.").

"In cases involving the submission of supplemental evidence subsequent to the ALJ's decision, the record includes that evidence submitted after the hearing and considered by the Appeals Council." Bergmann v. Apfel, 207 F.3d 1065, 1068 (8th Cir. 2000) (citations omitted).

The court must decide if substantial evidence in the record as a whole, including the new evidence submitted after the hearing, supports the ALJ's decision. Id. (citation omitted). This requires the court to determine how the ALJ would have weighed the new evidence had it existed at the hearing. Id.

## Discussion

The ALJ employed the familiar five-step test to determine whether Stowe was disabled.[1] The ALJ determined plaintiff had not engaged in substantial gainful activity since the amended alleged onset date of disability. (Tr. 14). He found Stowe has the following severe impairments which do not meet or equal any listed impairment: mental impairments, back pain, headaches, and fibromyalgia. (Tr. 14-16, 19). The ALJ found Stowe's fatigue, sleep disorder, hypertension, peripheral edema, gastric issues, fractured nose, and right knee pain to be non-severe impairments. (Tr. 17-19). He determined plaintiff is capable of performing her past relevant work as a laundry folder and a general laborer. (Tr. 30-31).

Plaintiff alleges the ALJ and Appeals Council committed the following errors: failing to find her sleep disorder is severe; failing to find her mental impairments meet a listed impairment; failing to accept as credible her subjective complaints; failing to properly determine her residual functional capacity ("RFC"); failing to give controlling weight to her treating physician; and failing to reverse the ALJ's decision in light of the new evidence.

---

[1] The five steps are: (1) whether the claimant is engaged in any substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App.1; (4) whether the claimant can return to her past relevant work; and (5) whether the claimant can adjust to other work in the national economy. 20 C.F.R. § 404.1520(a)(5)(i)-(v).

**Sleep Disorder**

Plaintiff contends the ALJ should have found her sleep disorder to be a severe impairment. Stowe was diagnosed with hypersomnia, not otherwise specified ("NOS"), on April 24, 2006. (Tr. 350-51). She underwent an actigraphy study, a night-time sleep study, and a multiple sleep latency test. (Tr. 286, 417, 419, 420, 457). On July 26, 2006, after Stowe completed the tests, Dr. Karaz reported Stowe has hypersomnia, NOS, and intrinsic sleep disorder, NOS, with frequent unexplained arousals. (Tr. 417). Dr. Karaz recommended plaintiff sleep eight to nine hours a night, and take a one to two hour daily nap. (Tr. 417). Stowe argues Dr. Karaz's recommendation indicates her sleep disorder is severe. She also states that on September 29, 2005, she was advised not to drive because of her sleep disorder. Plaintiff contends these limitations significantly limit her ability to work.

There is evidence in the record that Stowe does drive, and she does not nap daily. Stowe testified she has a driver's license and reported numerous times she drives locally. (Tr. 69, 71, 187, 351, 479, 686). On August 16, 2006, plaintiff denied having any fatigue. (Tr. 779). In May of 2007, Stowe discontinued her stimulant medication, Adderall, and told her social worker that since she discontinued Adderall, she is having difficulties staying awake during the daytime. (Tr. 676, 678). This infers Stowe was not napping daily prior to discontinuing her stimulant medication. There is also evidence in the record plaintiff was not napping daily after discontinuing Adderall. Plaintiff stayed at a crisis residential unit from September 20, 2007 until September 24, 2007, and from November 13, 2007 until November 29, 2007, where the staff documented plaintiff's sleeping habits. A review of the records from her stays at the crisis residential unit reveal that although Stowe did nap at least once, she did not nap daily. (Tr. 716,

717, 719, 722, 723, 724, 726, 727, 730, 731, 733, 734, 735, 736, 739, 740, 742, 745, 746, 747, 748, 749, 752).  When Stowe was discharged on November 29, 2007, she reported she will "work on getting up in the mornings and staying up when she gets her son, Sawyer, up for school."  (Tr. 579, 806).  In December of 2007, plaintiff reported "she gets up at 6:00 a.m. and stays up and showers, and is busy throughout the day," and "she has a routine of getting up and staying up throughout the day and finds that she is sleeping better at night." (Tr. 802, 804).

The ALJ stated, "The record supports that claimant's sleep disorder and hypersomnia are under good control with medication and when claimant is active and refrains from napping during the day."  (Tr. 17-18).  He found "[plaintiff's] conditions, even when considered in combination, do not meet the definition of a 'severe' impairment within the meaning of the Social Security Act."  (Tr. 18).  "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities."  Kirby v. Astru, 500 F.3d 705, 707 (8th Cir. 2007).  The record as a whole reflects that plaintiff drives and does not take daily naps.  Therefore, she is not significantly limited by her sleep disorder.  There is substantial evidence to support the ALJ's determination that plaintiff's sleep disorder is not severe.

### Listed Impairment

Plaintiff contends she is disabled because she meets or equals the listing for affective disorders and for anxiety-related disorders.  In order to qualify for the listing for either condition plaintiff must meet the requirements of both the A and B criteria.  However, the ALJ found that while plaintiff does meet the A criteria for both sections, she does not meet the B criteria.  (Tr. 20-24).  The list of B criteria is exactly the same for both affective disorders and anxiety-related

disorders.  Plaintiff must meet at least two of the following:

>    1. Marked restriction of activities of daily living; or
>    2. Marked difficulties in maintaining social functioning; or
>    3. Marked difficulties in maintaining concentration, persistence, or pace; or
>    4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.04(B), 12.06(B).  The ALJ found plaintiff is moderately limited in her activities of daily living, mildly limited in social functioning, moderately limited in concentration, persistence, or pace, and she does not meet the definition for repeated episodes of decompensation, each of extended duration.  (Tr. 20-24).  Plaintiff claims to have marked restrictions of activities of daily living and marked difficulties in maintaining social functioning, and to have experienced repeated episodes of decompensation, each of extended duration.

I.    Activities of Daily Living and Social Functioning

The ALJ found plaintiff's statements concerning her activities of daily living were not fully credible because "the record contains a significant number of inconsistencies and incongruities which call into question the degree of limitation alleged by the claimant . . . ."  (Tr. 21).  The ALJ stated the following facts support his finding: "Claimant, in forms completed in connection with her applications for benefits, stated that she has no interests or hobbies; however, the record documents that claimant enjoys reading, watching television, dancing, watching movies, and going out to eat;" claimant testified she does not cook, but the record reflects that in December of 2006 she was cooking meals for four to six people on a daily basis; claimant testified she does some light cleaning around the house, but describes the task as overwhelming; however, plaintiff was able to clean her friend's apartment, following which she was offered a cleaning job which plaintiff declined; and plaintiff testified that she "shuts down"

7

when she is stressed, but in a Function Report she "indicated that she was responsible for the care of her son which included ensuring that he was fed, he properly took his medication, and he brushed his teeth." (Tr. 20-21). The ALJ "following review of the record in its entirety in a light most favorable to the claimant and affording her the highest benefit of the doubt, [found] that a 'moderate' limitation is warranted in . . . 'Activities of Daily Living.'" (Tr. 21).

The ALJ determined, "The record also contains inconsistencies with regard to the level of limitation alleged by the claimant and the level of limitation supported by the record in the area entitled 'Social Functioning.'" (Tr. 22). The ALJ stated the following facts support his finding: Claimant told an emergency room nurse she does not like being around people, but she has been described on several occasions as being pleasant, conversational, and cooperative; it was noted that plaintiff has no difficulties interacting with others; she developed friendships after moving to North Dakota; she currently has a boyfriend; and she has a good relationship with her mother and her son. (Tr. 22). The ALJ "following review of the record in its entirety, [was] satisfied that a 'mild' limitation is warranted in the area of social functioning." (Tr. 22). He noted his conclusion is consistent with the determination of the medical consultant who reviewed plaintiff's claim on reconsideration. (Tr. 22).

In support of her own credibility plaintiff states she has problems taking care of her personal needs because of her fear of urine and feces, she does not cook, vacuum, or take out the garbage, and her mother confirmed plaintiff's statements when she stated plaintiff has trouble with showering and cleaning. Plaintiff points to Dr. Gulkin's psychological evaluation as support for the evidence provided by plaintiff and her mother because Dr. Gulkin found plaintiff has significant adjustment difficulties, and her ability to perform daily activities and deal with

external stressors or demands is compromised.  Dr. Gulkin also found plaintiff's ability to deal with the demands of full time employment is compromised.  Overall, plaintiff contends, Dr. Gulkin's report shows that she has marked restrictions in activities of daily living and marked difficulties in maintaining social functioning.

"Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole."  Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).  The ALJ pointed out several inconsistencies in the evidence warranting his findings that plaintiff has moderate restrictions in her activities of daily living and mild difficulties in maintaining social functioning.  Beyond the inconsistencies noted by the ALJ in plaintiff's claimed activities of daily living, the record reflects she "completed" a blanket, does research on the internet, enjoys puzzle books and crafts, exercises, has taken out her friend's garbage, was able to prepare for a garage sale, and injured her knee while playing basketball.  (Tr. 51, 263, 461, 489, 561, 567, 586, 587, 589, 617, 670, 707, 717, 719, 722, 723, 724, 734, 769, 817, 803, 819).  With regard to plaintiff's social functioning, the record reflects she made multiple paper snowflakes for her family and friends, she occasionally drinks socially and sings karaoke, and when she was staying at the residential unit she would visit, watch television, and play cards with others.  (Tr. 687, 719, 723, 724, 733, 734, 735, 746, 747, 748, 803, 906).

The court has thoroughly reviewed Dr. Gulkin's report and plaintiff's mother's statements.  The ALJ did not comment on plaintiff's mother's statements and was unable to review Dr. Gulkin's report, which was submitted after his decision.  Neither undermine the ALJ's findings.  Dr. Gulkin suggested plaintiff exaggerates her complaints.  He stated Stowe's psychometric test results reveal her "reality testing is intact but there is an exaggerated report of

9

complaint." (Tr. 910). He went on to state, "This finding may be malingered but it is also associated with extreme distress and symptom exaggeration as a plea for help." (Tr. 910). Plaintiff's mother's statements are inconsistent with the record as a whole given plaintiff's activities of daily living and level of social functioning.

The ALJ thoroughly evaluated the record and gave several specific reasons for finding plaintiff's statements were not fully credible. "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [the court] will normally defer to the ALJ's credibility determination." Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003) (citation omitted). The ALJ's findings that plaintiff is moderately limited in her activities of daily living and mildly limited in social functioning is supported by substantial evidence in the record as a whole.

II.     Concentration, Persistence, and Pace

The ALJ found plaintiff is moderately limited in her ability to concentrate and maintain adequate persistence and pace (Tr. #20), and plaintiff does not challenge that finding.

III.    Decompensation

Plaintiff claims to have experienced repeated episodes of decompensation, each of extended duration. "The term repeated episodes of decompensation, each of extended duration . . . means three episodes within 1 year, or an average of once every four months, each lasting for at least two weeks." 20 C..F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(4). The record does not appear to support a finding of repeated episodes of decompensation, but even if plaintiff did meet this requirement, she would still fail to meet the listing for affective disorders or for anxiety-related disorders. Even with repeated episodes of decompensation, plaintiff would need

a second "B" criteria of "marked" restrictions or difficulties in activities of daily living, social functioning, or concentration, persistence, or pace, as required for the listing. 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.04(B), 12.06(B).

### Residual Functional Capacity and Treating Physician's Opinions

The ALJ asked the vocational expert a hypothetical based on a RFC questionnaire, as follows:

> Q     Okay. All right, let's move to an entirely new hypothetical question and this is from Exhibit 32F [Dr. Westbrook's answers to the RFC questionnaire]. Of course you do not have a copy of it but I do and I'm going to read it into the record as best I can. During a typical workday the claimant's experience of pain or other symptoms is severe enough to interfere with attention and concentration needed to perform even simple tasks on an occasional basis. She would be capable of low-stress jobs. She'd be able to walk six blocks, sit at one time for only one hour, stand at one time for only 20 minutes. She'd be able to stand and/or walk about two hours in an eight-hour workday total and then sit for about four hours in an eight-hour workday total. Now just assuming those limitations that would preclude full-time work, correct?
>
> A     I believe so, yes.

(Tr. 86-87).

The ALJ did not find plaintiff's RFC conformed to Dr. Westbrook's opinion. Although the ALJ considered the questionnaire filled out by Dr. Westbrook, he did not assign it significant weight because it was inconsistent with Dr. Westbrook's office notes. (Tr. 28). The ALJ noted that Dr. Westbrook stated plaintiff is in constant pain, but less than four months earlier she wrote in her office notes that ibuprofen provides good relief of plaintiff's pain. (Tr. 28). The ALJ overlooked that plaintiff quit taking ibuprofen after reporting occasional bloody stool from it. (Tr. 855). However, this error is not significant because after plaintiff discontinued ibuprofen, Dr. Westbrook increased her Ultram Extended Release and prescribed Celecoxib, and less than

11

two months later, Dr. Westbrook wrote that Ultram Extended Release provides good relief of plaintiff's pain. (Tr. 848, 855). The ALJ also stated, "Dr. Westbrook, prior to completing [the questionnaire], had asked the claimant on several occasions to rate her pain and claimant generally rated her pain between a '4' and '6' indicating that she was experiencing no more than moderate pain." (Tr. 28). "It is permissible for an ALJ to discount an opinion of a treating physician that is inconsistent with the physician's clinical treatment notes." Davidson v. Astrue, 578 F.3d 838, 843 (8th Cir. 2009).

Dr. Westbrook began treating plaintiff for "constant" pain on December 12, 2006. (Tr. 887). Since that time plaintiff has been injured twice while dancing and once while playing basketball. Only three months after Dr. Westbrook began treating plaintiff for "constant" pain, plaintiff reported that she slipped and twisted her knee while dancing. (Tr. 570). On June 20, 2007, plaintiff injured her knee while playing basketball. (Tr. 567). On June 13, 2008, less than four months after Dr. Westbrook filled out the fibromyalgia RFC questionnaire, plaintiff reported she fell backwards while dancing and hit her elbow on the floor. (Tr. 921). It is difficult to imagine someone in "constant" pain who is able to dance and play basketball. A physician's opinion may be given less weight if it is inconsistent with the record. Stormo v. Barnhart, 377 F.3d 801, 805-06 (8th Cir. 2004) (citation omitted). The ALJ's finding that Dr. Westbrook's opinion is not entitled to significant weight is supported by substantial evidence in the record as a whole.

Plaintiff contends the ALJ should have done further investigation if he questioned Dr. Westbrook's opinion. The ALJ did not violate his duty to develop the facts by failing to request additional information from Dr. Westbrook. "[The ALJ] does not . . . have to seek additional

12

clarifying statements from a treating physician unless a crucial point is undeveloped." Stormo, 377 F.3d at 806. In this case, plaintiff does not identify, nor does the court find, a crucial point that is undeveloped.

### New Evidence

Plaintiff contends the Appeals Council erred by not reversing the ALJ's decision based on Dr. Gulkin's psychological evaluation. "Once it is clear that the Appeals Council has considered newly submitted evidence, [the court does] not evaluate the Appeals Council's decision to deny review." Riley v. Shalala, 18 F.3d 619, 622 (8th Cir. 1994). The court's "role is limited to deciding whether the administrative law judge's determination is supported by substantial evidence on the record as a whole, including the new evidence submitted after the determination was made." Bauer v. Shahala, 53 F.3d 917, 919 (8th Cir. 1995). In this case the court does find the ALJ's decision is supported by substantial evidence on the record as a whole, including the new evidence submitted to the Appeals Council.

### Conclusion

The ALJ properly determined plaintiff can perform her past relevant work as a general laborer or laundry folder. After considering the errors alleged by Stowe, the magistrate judge is satisfied that substantial evidence supports the ALJ's findings and conclusions that plaintiff is not disabled. Accordingly, it is **RECOMMENDED** that plaintiff's motion for summary judgment (Doc. #11) be **DENIED**, plaintiff's motion to remand (Doc. #14) be **DENIED**, defendant's motion for summary judgement (Doc. #15) be **GRANTED**, and the decision of the Commissioner be **AFFIRMED**.

**Notice of Right to Object**

Pursuant to Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1 (D)(3), any party may object to this recommendation within fourteen (14) days after being served with a copy.

Dated this 16th day of March, 2010.

/s/ *Karen K. Klein*
Karen K. Klein
United States Magistrate Judge